EVENS & HOWARD FIRE BRICK CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6797.    Promulgated October 20, 1927.

1. EXPENSES.—Petitioner paid one of its salesmen $5,000, who in turn paid the money over to certain contractors for their use in obtaining certain municipal contracts for which the petitioner hoped to furnish to the contractors the material necessary in performing such contracts. *Held*, that the evidence is insufficient to allow the deduction claimed.

2. INCOME AND DEDUCTIONS—OVERLAPPING ITEMS.—Petitioner for a period of more than 30 years consistently carried on its books an account captioned "Current Surplus." To this account it debited and credited items of income and expense and bookkeeping errors which, in its opinion, pertained to years other than the current year. At the end of each year it transferred the balance of the account direct to its regular "Surplus." After the enactment of the income tax laws it reflected whatever balance existed in the "Current Surplus" account in its income-tax return. If a debit balance existed, it was claimed as a deduction. Likewise, if a credit balance existed, it was reported as income. During 1919 and 1920, 311 items were either debited or credited to this account. *Held*, that where the petitioner relies upon that part of article 111 of Regulations 62 dealing with "overlapping items" and the respondent concedes that at least 111 items should be treated as outlined in that article, and neither party questions the validity of the article, the Board will apply the same principles contained therein to the remaining 200 items. Eleven of the 200 items were excluded and passed upon separately.

3. IMPROVEMENT TAXES—INTEREST.—Petitioner in 1920 paid $290.59 for city improvement taxes and $21.42 interest in connection therewith, or a total of $312.01. *Held*, that only the interest in the amount of $21.42 was deductible from gross-income in 1920.

4. JURISDICTION.—Deficiencies here involved are for 1919 and 1920. *Held*, that where an additional tax determined by the Commissioner for 1917 had not been paid prior to 1919 or 1920, the Board in determining the correct invested capital for 1919 and 1920 had jurisdiction to determine whether the alleged liability for additional taxes for 1917 was justified under the facts and law applicable to that year.

5. EXPENSES.—During 1915, 1916, and 1917, the petitioner engaged the services of certain efficiency engineers for the purpose of studying conditions at its plant with the hope of increasing production at a reduced cost of operations. *Held,* that such expenditures were deductible as ordinary and necessary business expenses and should not be capitalized as contended for by the petitioner.

*Lawrence A. Baker, Esq.,* and *R. L. P. Wallace, Esq.,* for the petitioner.

*Philip M. Clark, Esq.,* for the respondent.

In this proceeding the petitioner seeks a redetermination of its income and profits-tax liability for the calendar years 1919 and 1920, for which the Commissioner has determined deficiencies in the sums of $312.86 and $3,846.69, respectively.

Four errors are assigned: (1) Erroneous disallowance as a deduction from gross income in 1919 of $5,000 as representing alleged commissions incurred and paid during 1919; (2) erroneous disallowance as deductions from gross income in 1919 and 1920, respectively, of the debit balance as of December 31, 1919, and December 31, 1920, of a special account carried on the books under the caption " Current Surplus "; (3) erroneous disallowance as a deduction from gross income in 1920 of $290.59 as representing an alleged liability incurred for taxes; and (4) erroneous exclusion from invested capital for both 1919 and 1920 of $19,403.57 as representing an amount of an abatement claim for 1917 Federal income and excess-profits taxes rejected by the Commissioner.

### FINDINGS OF FACT.

The petitioner is a Missouri corporation with its principal offices at St. Louis. During the taxable years 1919 and 1920 and prior thereto, it was engaged in the business of manufacturing and selling fire brick and other clay products, including such products as sewer piping known as the Ferguson Segment Block.

On August 19, 1919, the petitioner drew a check for $5,000 payable to the order of its secretary-treasurer, George W. Jones. Jones cashed the check and turned the money over to J. V. Conrad, who was one of the petitioner's traveling salesmen. Conrad in turn paid the money over to certain contractors to be used by such contractors in securing certain municipal contracts for which the petitioner expected to furnish to the contractors the Ferguson Segment Blocks necessary to complete the city contracts. No part of the $5,000 was for Conrad's personal use.

The disbursement of the $5,000 was charged to an account carried in the private ledger under the caption " Sales Promotion." During 1919 there were 35 other charges to this same account totaling

$5,934.26, ranging all the way from $5 to $807.32. The account was kept by the petitioner for the purpose of segregating from the general sales expense, items used by the petitioner for the promotion of sales.

The petitioner has no vouchers to show how the money was disbursed by Conrad and as a matter of record has nothing further than the canceled check cashed by Jones and the book entry that this amount was spent in St. Cloud, Minn. The petitioner did not render to the Commissioner any return under section 256 of the Revenue Act of 1918 setting forth the names and addresses of the person or persons to whom the $5,000 was paid. The Commissioner allowed as a deduction from gross income the 35 items totaling $5,934.26, but refused to allow the $5,000 spent by Conrad on the ground that sufficient information had not been furnished as to the names of the recipients and the services performed by them.

The petitioner in keeping its books employed the accrual method of accounting and rendered its income-tax returns upon that basis. Among the accounts which the petitioner kept in its ledger was an account captioned " Current Surplus," to which account was debited and credited all items which, in the opinion of the petitioner, were applicable to prior years. It maintained this account for the purpose of keeping out of the current year operations all items which, in its opinion, pertained to prior years. At the end of every year it would transfer the balance of this account to the regular " Surplus " account, charging surplus if a debit balance existed and crediting surplus if a credit balance existed. This method of handling items, which in the opinion of the petitioner pertained to prior years, has been consistently used by the petitioner for approximately 30 years. During 1919, " Current Surplus " was debited with 87 different items totaling $15,891.07 and ranging in amounts from one cent to $3,219.18. During the same year, " Current Surplus " was credited with 92 different items totaling $19,764.03 and ranging in amount from one cent to $11,470.07. During 1920 " Current Surplus " was debited with 87 different items totaling $10,374.47 and ranging in amounts from one cent to $1,290.81. During the same year, " Current Surplus " was credited with 45 different items totaling $4,252.49 and ranging in amounts from one cent to $934.22.

In 1919, the " Current Surplus " account had a credit balance of $3,872.97 and in 1920, it had a debit balance of $6,121.98.

After the passage of the income-tax laws, the amount of the debit or credit, as the case might be, carried to the regular surplus account at the end of each year, was reflected in the income statement reported on the current income-tax return. If a debit balance existed, the amount of the debit balance was claimed by the petitioner as a deduction from gross income. Likewise, if a credit balance existed, it reported such credit balance as income.

Among the 87 items debited to " Current Surplus " during 1919 appear the following items:

Key No. 10, March, DV 93_____ $1, 133. 05
Key No. 26, June, PJ_____   2, 178. 01
Key No. 39, October, DV 288_____   1, 593. 36
                                                                     _____
                                                                       4, 904. 42

The first item above, in the amount of $1,133.05, represents an amount paid to one Otto Rollin in March, 1918, for machinery. Instead of debiting the machinery account at the time of the purchase in 1918, the petitioner's bookkeeper, through error, debited "Accounts Payable " in the amount of $1,133.05. In December, 1918, the error had not yet been discovered except to the extent that machinery inventory was discovered to be undervalued in the amount of $1,133.05. Machinery inventory was therefore debited in December, 1918, with the amount of $1,133.05 and " Profit and Loss " credited with a like amount. In March, 1919, the error was discovered, and to correct the error the petitioner credited ."Accounts Payable " with the amount of $1,133.05 and debited " Current Surplus " with the same amount.

The explanation contained in petitioner's Exhibit No. 2 respecting the second item above, in the amount of $2,178.01, is as follows:

This entry was necessary to adjust an error in taking inventory of No. 3 Works coal at December 31, 1918. When the adjustment was made it was charged to profit and loss instead of to current surplus.

The explanation contained in petitioner's Exhibit No. 2 respecting the third item above, in the amount of $1,593.36, is as follows:

This amount writes off an old balance which had appeared as a debit on the general time check account for some years. Upon investigation of the account, it was found that time checks had been given out to the men by the timekeeper without proper care having been exercised to see that credit appeared for them as deductions from payrolls. This state of affairs which was the result of the careless method of handling time checks, can be easily explained by the fact that when the factory men were paid twice a month many were hired and fired or quit between paydays, time checks being given them for the time worked. These time checks were not included as deductions from pay rolls, the names not being sent to the general office on cards. At the beginning of 1919 a new method was instituted, the old account being rendered inactive, and a new account for each factory created. These new accounts are kept in balance from an analysis kept by a clerk and they are audited monthly.

Among the 92 items credited to " Current Surplus " during 1919 appear the following items:

Key No. 63, March, DV 12_____ $1, 034. 19
Key No. 66, March, DV 15_____   1, 282. 24
Key No. 91, November, JV 5621_____   1, 000. 00

Key No. 92, November, DV 353_____ $1, 031. 14
Key No. 93, November, PJ_____ 290. 59
Key No. 94, December, PJ_____ 11, 470. 07

16, 108. 23

The explanation contained in petitioner's Exhibit No. 2 respecting the first item above, in the amount of $1,034.19, is as follows:

Our ledger showed that we owed the St. Louis Merchants Bridge Terminal $785.98 more than was actually the case and the Commercial Electric Company $248.21 more than was actually the case. As these items were of the years 1917 and 1918 this voucher was made crediting current surplus and debiting accounts payable.

The explanation contained in petitioner's Exhibit No. 2 respecting the second item above, in the amount of $1,282.24, is as follows:

$1,280.74 of this amount was credited to the Missouri Pacific Railroad twice in error in the year 1918 and when the account was adjusted in 1919 the item was credited to current surplus, with the corresponding charge to the railroad company. The balance of $1.50 is similar in explanation to the above.

The explanation contained in petitioner's Exhibit No. 2 respecting the third item above, in the amount of $1,000, is as follows:

Sales promotion or commission had been twice credited on our records to a customer when the agreement was for once only. As this was not discovered until the close of the year 1919 the credit on our records had to be to current surplus with the charge to the customer.

The explanation contained in petitioner's Exhibit No. 2 respecting the fourth item, in the amount of $1,031.14, is as follows:

Unclaimed wages of workmen at plants carried on our books for a few years and written off.

The explanation contained in petitioner's Exhibit No. 2 respecting the fifth item, in the amount of $290.59, is as follows:

A liability on our records stood in the name "special tax bill account." Checking of this account developed that the liability no longer existed, so the account was closed with a credit to current surplus.

The sixth item above, in the amount of $11,470.07, represents the writing off of a reserve for income taxes previously set up on the books.

Among the 87 items debited to "Current Surplus" during 1920 appear the following items:

Key No. 117, April, JV 211_____ $1, 290. 81
Key No. 138, July, JV 475_____ 1, 059. 03

2, 349. 84

The explanation contained in petitioner's Exhibit No. 2 respecting the first item above, in the amount of $1,290.81, is as follows:

This was written off from our records. It was an amount covering uncollectible railway claims filed December 22, 1906.

The explanation contained in petitioner's Exhibit No. 2 respecting the second item above, in the amount of $1,059.03, is as follows:

This entry cancels from our records railroad claims which were found to be worthless. These claims are listed in detail in the journal. They all apply to years prior to 1920.

The petitioner's gross sales in 1919 and 1920 were $1,205,406.68 and $2,095,744.22, respectively.

The petitioner carried in its ledger a "Special Tax Bill Account." This account was credited with liabilities for city improvement taxes. As the liabilities were paid, the account was debited. At the close of 1919 this account had a credit balance of $290.59, but at that time the petitioner was unable to find any record of liability for that amount. On December 31, 1919, it closed out the account by means of the following journal entry.

|  | Dr. | Cr. |
|---|---|---|
| Special Tax Bill Account | $290.59 | |
| Current Surplus | | $290.59 |

Our records show all Special Tax bills Paid. This Liability no longer exists.

In 1920, however, it received a statement for $290.59 plus interest in the amount of $21.42 or a total of $312.01. It claimed the latter amount as a deduction from gross income in 1920. The Commissioner disallowed the full amount.

During the years 1915, 1916, and the early part of 1917, the petitioner paid the following amounts to certain efficiency engineers for the installation in its plant of what is known as the Emerson Efficiency System:

| Year: | Amount |
|---|---|
| 1915 | $12,750.00 |
| 1916 | 15,707.15 |
| 1917 | 1,502.21 |
| Total | 29,959.36 |

The purpose of this system was to increase the earning capacity of the petitioner. It involved the sending of efficiency engineers to the petitioner's plant where they made a survey of conditions and spent time in studying the workmen. With the information gained from this process the "time study men" of the Emerson System endeavored to improve conditions and thus increase earnings of the petitioner.

There were no tangible additions to the petitioner's plant as a result of this system. The employees of the petitioner down as far as the foreman received instructions from the agents of the Emerson Efficiency System. It was very much the same as though the petitioner had conducted a school for its higher-grade workmen.

During 1917, a great number of the petitioner's employees, who had received this instruction, resigned and enlisted in the armed

forces of the United States. It was not possible for the petitioner to secure other employees who would fit into the Emerson System, whereupon it became necessary to abandon it altogether, which it did during 1917.

After careful discussions in 1915, the officers of the petitioner determined that the amounts expended on the Emerson Efficiency System should be capitalized and charged off over a period of five years. During 1915 and 1916, it charged off 20 per cent of the balance in the account at the end of each year, or amounts of $2,550 and $5,181.45, respectively. During 1917, it charged off the balance remaining in the amount of $20,725.70 plus the addition of $1,502.21 made during the early months of 1917. It claimed the total amount charged off in 1917 of $22,227.91 as a deduction from gross income in that year. The Commissioner allowed $1,502.21 of the deduction claimed in 1917 but disallowed the balance on the ground that in his opinion the expenditures were deductible as an ordinary and necessary expense in the year in which incurred and accordingly allowed the full amounts of $12,750 and $15,707.15 as deductions in 1915 and 1916, respectively. On that basis, the Commissioner determined an income and excess-profits-tax liability against the petitioner for 1917 of $71,283.26 which he has excluded from the petitioner's invested capital for the years 1919 and 1920.

### OPINION.

GREEN: The issues are set forth above and will be discussed in the order given.

The first issue involved is whether the Commissioner erred in refusing to allow as a deduction from gross income in 1919 an item of $5,000 paid by the petitioner to one of its salesmen, who in turn paid the money over to certain contractors for their use in enabling themselves to obtain certain municipal contracts, for which the petitioner hoped to furnish to the contractors the material necessary to perform the contracts obtained by them with the use of the petitioner's money. We do not have sufficient evidence upon which to base a determination that this is an ordinary and necessary expense of the taxable year. This issue is very similar to the issue involved in the *Appeal of National Concrete Co.*, 3 B. T. A. 777, wherein we said in part:

By not furnishing sufficient evidence of the alleged expenditures, the taxpayer has failed in its proof of ordinary and necessary business expense; also, as is pointed out, the Commissioner is unable to check up or compute the income of the unknown persons alleged to have received this money, as the taxpayer has failed to comply with section 256 of the Revenue Act of 1918 * * *.

We, therefore, sustain the Commissioner's determination on the first issue.

Respecting the second issue, the petitioner carried on its books an account under the caption of " Current Surplus." It debited and credited to this account all items which, in its opinion, were applicable to years other than the current year. This account was established approximately 30 years prior to the years here involved. It had been the consistent practice of the petitioner to close out this account at the end of each year direct to surplus but after the enactment of the income-tax laws, the petitioner adopted the practice of reflecting the net balance of the " Current Surplus " account in the net income for the current taxable year. If a debit balance existed in the account at the close of the year, it was claimed as a deduction from gross income and likewise, if a credit balance existed, it was reported as a part of the gross income. After eliminating a credit item to this account in 1919 of $11,470.07, representing a restoration to surplus of a reserve for Federal income taxes of prior years and therefore clearly not an item of income in any year, the remaining debit balance to the " Current Surplus " account in 1919 is $7,597.10. In 1920 a debit balance existed in the account of $6,121.98. It is the petitioner's contention that these debit balances of $7,597.10 and $6,121.98 should be allowed as deductions from gross income in 1919 and 1920, respectively, in accordance with that part of article 112 of Regulations 69 and 65 (and article 111 of Regulations 62) reading as follows:

It is recognized, however, that particularly in a going business of any magnitude there are certain overlapping items both of income and deduction, and so long as these overlapping items do not materially distort the income, they may be included in the year in which the taxpayer, pursuant to a consistent policy, takes them into his accounts.

There was no such provision in any of the regulations prior to Regulations 62.

The record is not clear as to the action taken by the Commissioner on this point. Both parties in their briefs make statements to the effect that because the Commissioner was of the opinion that most of these debit and credit items in 1919 and 1920 were adjustments pertaining to 1918 and 1919, respectively, the Commissioner in determining the deficiencies here in question allowed the debit balance of 1920 of $6,121.98 as a deduction for the year 1919, and allowed the debit balance which existed in 1921 of $2,741.66 as a deduction for the year 1920. The deficiency letter attached to the petition, however, contains the following statement:

EXPLANATION OF ITEMS UNCHANGED

The information furnished regarding the following items has been given careful consideration but has not been considered sufficient to allow them as deductions in arriving at the taxable net income.

Adjustments to current surplus account, net decrease_____ $6, 121. 98

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Adjustment to Surplus account_____ $2, 741. 66

But regardless of the action taken by the Commissioner in his deficiency letter, he now concedes in his brief that 111 of the 311 items in question were the kind of items contemplated by article 112, *supra*. Neither party questions the validity of the article itself. Under such circumstances the Board will do no more than examine the remaining 200 items still in dispute between the parties with a view of ascertaining which, if any, of such items were of the kind contemplated by the respondent's regulations. The question thus narrows itself to a determination of which items, if any, of the remaining 200 would not "materially distort the income" if permitted to be included as deductions or income "in the year in which the taxpayer, pursuant to a consistent policy, takes them into his accounts." In determining this question we have given consideration to the nature, size, and quantity of the items together with the kind and magnitude of the petitioner's business. We have set out in our findings of fact 3 debit items to "Current Surplus" during 1919 in the amount of $4,904.42, 6 credit items to "Current Surplus" during 1919 in the amount of $16,108.23, and 2 debit items to "Current Surplus" during 1920 in the amount of $2,349.84 which in our opinion are not the kind of items contemplated by article 112, *supra*. These 11 items should in our opinion be excluded from the "Current Surplus" account and treated as separate and distinct issues by themselves. A tabulation of our findings in connection with the "Current Surplus" account is as follows:

| Explanation | Debit items | | Credit items | |
|---|---|---|---|---|
| | Number | Amount | Number | Amount |
| **1919** | | | | |
| Included in the account_____ | 87 | $15, 891. 07 | 92 | $19, 764. 03 |
| Excluded in our opinion_____ | 3 | 4, 904. 42 | 6 | 16, 108. 23 |
| To be treated as deductions and income, respectively, in redetermining the deficiencies_____ | 84 | 10, 986. 65 | 86 | 3, 655. 80 |
| Conceded in respondent's brief_____ | 21 | 5, 358. 62 | 39 | 617. 40 |
| Additional allowance by the board_____ | 63 | 5, 628. 03 | 47 | 3, 038. 40 |
| **1920** | | | | |
| Included in the account_____ | 87 | 10, 374. 47 | 45 | 4, 252. 49 |
| Excluded in our opinion_____ | 2 | 2, 349. 84 | | |
| To be treated as deductions and income, respectively, in redetermining the deficiencies_____ | 85 | 8, 024. 63 | 45 | 4, 252. 49 |
| Conceded in respondent's brief_____ | 31 | 1, 828. 42 | 20 | 680. 25 |
| Additional allowance by the board_____ | 54 | 6, 196. 21 | 25 | 3, 572. 24 |

It now remains to be considered whether any of the 11 items excluded from the "Current Surplus" account should either be

allowed as deductions or included in income for either the year 1919 or 1920. The first item of $1,133.05, key No. 10, is clearly not an allowable deduction in either 1919 or 1920. The record with respect to items bearing key numbers 26, 39, 63, 66, 91, 92, 117, and 138, does not contain sufficient evidence to enable the Board to pass upon them other than that in our opinion they are not the kind of items contemplated by article 112, *supra*. Item bearing key No. 93, in the amount of $290.59, is not income. It was a liability existing on the petitioner's books at the close of 1919 which the petitioner paid in 1920. The last item, in the amount of $11,470.07, key No. 94, is clearly not income in any year. It was merely the restoration to the regular surplus account of a reserve previously set up for income taxes which does not constitute the realization of taxable income.

For the taxable year 1919, the amount of $3,655.80 should be included in gross income and the amount of $10,986.65 should be allowed as deductions. Likewise, for the taxable year 1920, the amount of $4,252.49 should be included in gross income and $8,024.63 allowed as deductions.

In connection with the third issue, the petitioner is entitled to a deduction in 1920 of interest incurred in the amount of $21.42. The street improvement tax of $290.59 is not deductible. *Appeal of Caldwell Milling Co.*, 3 B. T. A. 1232.

The question presented in the fourth issue is whether the expenditures made in connection with the Emerson Efficiency System were capital expenditures or ordinary and necessary expenses. Before answering this question, it is necessary first to dispose of a jurisdictional question. As a step in determining the correct invested capital for the years involved in this proceeding, namely, 1919 and 1920, has the Board jurisdiction to determine the correct tax liability for the year 1917?

Section 274(g) of the Revenue Act of 1926 reads as follows:

The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid.

The petitioner contends that the amounts expended for the Emerson Efficiency System were capital expenditures, having a useful life of five years; that by reason of the abandonment of the system in 1917 the Commissioner should have allowed as a deduction in that year the amount of $22,227.91 instead of only $1,502.21; that by reason of that error, the tax liability for 1917 should have been $19,403.57 less, or $51,879.69 instead of $71,283.26; and that this difference of $19,403.57 should be included in invested capital for 1919 and 1920.

In *Appeal of Hamilton Manufacturing Co.*, 3 B. T. A. 1045, the redetermination of a deficiency for 1919 was involved. The petitioner there contended that it had overpaid its taxes for the years 1912, 1913, 1917, and 1918, and that the Board should determine the correct taxes for those years in order to arrive at the correct invested capital for 1919. The Board in denying the petitioner's contention in that case said:

The Board finds no merit in the taxpayer's contention that the amount of claims for refunds of Federal taxes pending unadjusted before the Commissioner should be included in its invested capital for the taxable year. It may be that eventually such refunds will be paid, and if so it may then become necessary to readjust invested capital and tax liability for the years affected by such payments. Determinations of tax liability by the Commissioner are *prima facie* evidence that the amounts so determined are due, and until reversed by him or by competent tribunals must be accepted as final ascertainments as to the matters involved. To adopt the rule suggested by the taxpayer would establish an endless-chain system of readjustments of tax liability equally unsatisfactory to the Government and to taxpayers.

In the instant case, however, the petitioner did not pay the $19,403.57 additional tax for 1917 until some time after April 16, 1923, the date its abatement claim for that amount was rejected by the Commissioner. Under such circumstances, we think that under section 274(g), *supra*, the Board had jurisdiction to determine, for the purpose of arriving at the correct invested capital for 1919 and 1920, the question whether a liability existed for additional 1917 taxes in the amount of $19,403.57.

On the merits of the question as to whether the efficiency system expenditures were of a capital nature or merely ordinary and necessary business expenses, we decide in favor of the respondent. The expenditures are analogous to several classes of business expenses which the statute allows as deductions from gross income. The engaging of the engineers may be likened to the employment of a more efficient management or to the installation or revision of an accounting system or to the conducting of a school for the training of employees. The compensation paid the engineers under any of such circumstances would be deductible as an ordinary and necessary business expense. See *Appeal of Schlosser Bros., Inc.*, 2 B. T. A. 137. We conclude that the liability for the tax existed, that the amount thereof should have been accrued, and that the Commissioner's action with reference thereto was correct.

The deficiencies should be recomputed in accordance with the foregoing opinion.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

SMITH dissents on the second point.